Good morning, your honors. On behalf of Steven Seagal, I'll be very brief. I've made most of the arguments in my briefs, and if you have any questions, I'll address those. What started out as a dispute over a lease became something far, far more serious than a dispute over a lease. And while it's not unreasonable to expect that a dispute over a tenancy would fall within the form selection clause, threats of physical harm clearly should not, and it should be the public policy of the state that threats of physical harm are treated differently. You're not really including the Buddha quote as a threat of physical harm. I am, your honor, and if you happen to explain that. I wouldn't be present to interpret Buddha that way, but go ahead. Well, if that's your religion, it can be taken out of context, your honor, and that's not part of the record, but I'm happy to address that if the court would like. You know, this is a case about access to the court system, and if we can get beyond the fact that it's Steven Seagal and look at somebody, a single parent, for example, somebody that doesn't have the financial resources that my client does. Setting a president in a case where you have to go to a foreign country like Germany to litigate, it really denies that litigant access to a judicial system, and in this case. But he has to go there anyway because he signed a lease that had a form selection clause in Germany, and he was in fact sued in Germany because of that. That's correct, your honor, but when Mr. Seagal signed that lease, he never anticipated that if a dispute arose that somebody would pick up the phone and threaten his life in this state. And he didn't anticipate that they would threaten the physical safety of the people that work for him and his family and the people that he travels with. That wasn't part of the deal, and that's what makes this case different. His family? Your honor, just to be clear, I don't know if that's part of the record or not, but he does travel with his family when he shoots movies. And the important thing to realize is that's just not what you anticipate. That there was a threat to his family, you say? No, your honor, I didn't mean to misspeak. But there were threats to him and to his assistant, and if it wasn't Mr. Seagal, you know, what we're basically saying is you have to fly to Germany, you have to hire counsel in Germany to stop this kind of behavior. I mean, this is not acceptable, and it's hard to get beyond, you know, some of the other things that were part of this lawsuit that maybe weren't relevant. But just to focus on what happened, they picked up the phone and threatened his safety. Could this part of the whole dispute be joined up with the litigation that's going on in Germany? What's the current status of that litigation? Your honor, just for the record, I don't know the current status, and we've objected to the judicial notice with respect to the action. I don't believe it's resolved, and I don't believe that intentional infliction of emotional distress is something that could be litigated there. But I don't know that for sure, and it wasn't part of the record. So I don't want to mislead anybody here. But certainly, the bigger point is should we allow this kind of conduct? And it's in the interest of the state of California not to allow it. It's a small little issue that Mr. Segal should have had a right to present to the trial court below. Counsel, what about the alternative forum nonconvenience ruling? Well, your honor, I think, you know, clearly that's a tough hurdle to overcome. But when you look at the court record, the court did not balance, or it certainly doesn't appear from the record because it wasn't discussed, certain key elements that are important. And in the Pariah case that we cited in our brief, that amounts to a clear abuse of discretion. And in particular, they didn't look at the public interest of the state of California to defending its citizens. Was there an oral argument? No, there wasn't, your honor. In fact, the forum nonconvenience wasn't raised by the defendant in this case. It was heard on the judge's own motion. We weren't permitted to present any briefing, any oral arguments, or anything of that nature. And I think the record on this point is absolutely clear. They didn't look at the private interest of Mr. Segal's assistant, to have to make him fly to Germany, to have to defend a case where somebody threatened his physical safety. They didn't look at the public interest of the state of California, which I think is a big one. And when you don't balance those interests, it's a clear abuse of discretion. Well, do you think that the injuries or the threatened injuries have to be looked at in terms of the entire cause of action that's pleaded, which is that you're accusing the plaintiff of causing damage by making fraudulent demands for excessive amounts for damages, and by threatening to illegally extort sums, by threatening to destroy a reputation, and by threatening him with severe injury? Do you analyze that claim as a whole, or do you just separate out your one and clause at the end? Because you've been arguing as if the issue were, what do you do with a claim that someone's been threatened with severe injury? Do you view that claim in the same way if it's a minor, comparatively minor part of it, or even just a part of a claim that the damages include all of these other aspects arising out of a contract? That's a great question, Your Honor. Well, it's not great. It may be okay. I think it is. And the answer to your question is you have to look at it that way. We're in a notice pleading form in the Federal courts. We've put the parties on notice of what our claim is, and while maybe we could have done a better job at articulating it at the pleading stage, I think we've met the hurdle that the courts... You have to look at it what way? In other words, Your Honor, what we're seeing is we're carving out the intentional infliction of emotional distress, and we agree with the trial court here that the other claims are related to what's going on in Germany and the lease, but the intentional infliction isn't. And we've put enough facts in our complaint to put the parties on notice of what our claim is. And that claim is a simple one. Hey, there's... No, no. The intentional infliction is carved out. But within the intentional infliction, you have these various aspects, only one phrase of which relates to what you've been talking about. I understand that, Your Honor. And I guess my point is that, you know, if we were given the opportunity to clear up the pleadings, we could maybe make it clearer. But we did within that cause of action list several things that amounted to the intentional infliction of emotional distress, and one of which I think is fair enough to look at here, which is what we're talking about, picking up the phones, threatening people's physical safety, and sending letters to California, you know... But you're still not really answering the great question.  Which is, do we look at what the proper place is for the claim of causing damages by this whole series of things, one of which is this phone call, or do we treat it as if this is... The phone call is the injury we're looking at in determining the status of the action. Don't we look at the entire claim, which is making excessive demands to compensate for damages, illegal extortion of funds, destruction of reputation, and the threat all combined? Where should that claim be tried? Your Honor, I still would have to argue that it has to be California. And if we needed to clean it up, we could. You know, the big picture here is pretty clear, that somebody picked up a telephone and threatened the physical safety of a movie star and the people that work for him, or at least one people that work for him. It wasn't Adel Prude herself who did that. She sent the letter, Your Honor. But she didn't pick up the phone? She had an aide make the script? Yes. I believe her business manager. And, Your Honor, I notice I'm running out of time. And if I could reserve the remaining time for rebuttal, I'd be happy to do that. Let me just ask one question. I presume you've now alluded, at least in your brief, to all of the factors you would have raised against a forum nonconvenience transfer had you known that one was being considered. Yes, Your Honor. May it please the Court. My name is Robert Treiman of Akin Gump for Mrs. Vorder Willebecke. I was actually going to make five points related to the forum selection clause, but Your Honors have made my first one for me, which is that you have to look at least at that whole claim because, as the Court has pointed out, the allegation of physical threats is just one of three or four different allegations in the claim. And I'll point out below they never made a motion to amend that claim, just try to strip it down, to get out stuff that relates to the lease, because undoubtedly all the other stuff clearly does relate to the lease. It relates to what damages were claimed, and you have to look at the lease and the performance and what damage there was and what damages were owed for. So we really think you can't treat it as if it's referenced in the reply brief. In the reply brief they say that they have a claim that's solely based on the alleged threats of physical harm, and that's just not the case. And it's an injustice to the district court because the district court in its order specifically discussed the claims as pled, and made a finding of what the claims were based on the claims as pled. And they didn't ask to amend down below, and they did have a chance to brief us. And I'd also point out down below that their briefing on the scope of the clause was exactly two sentences long. The primary part of their briefing on the form selection clause had to do with the interpretation of whether it was a mandatory or permissive clause. Almost no attention was paid to the scope, and they didn't ask the Court to do what they're doing here, saying construe it in a certain way. And one reason we pointed out, I didn't know how to deal with the standard of review briefing on here because it seemed like to me what they're saying, they want to recharacterize and sort of implicitly amend their claim to have it construed a certain way, which sort of sounded to me a little bit like abusive discretion. But in any event, we think the claim as it's pled, the district court got it right. It clearly arises from the lease. It clearly involves interpretation of the lease and the damages. That was point number one. Point number two that I was going to make is that Minetti-Ferro, it does have a little bit of a confusing language in there, but I wanted to make an observation about Minetti-Ferro. Minetti-Ferro relies on a case called Mediterranean, and I didn't actually cite it in the brief, but it's cited in Minetti-Ferro. It's called Mediterranean Enterprises, Inc., and it's an arbitration case. And what Minetti-Ferro says about Mediterranean is that that case employed a certain What Mediterranean said was it construed an arbitration clause that has the phrase arising under, but it didn't have the usual rest of the phrase in connection with or it's comparable related to. And the court said in Mediterranean, when you're missing the second part, it's a narrower clause. Here we're broader in two ways than Mediterranean. We're not arising under. We're arising out of. And also we have the second part. We have in connection to. But the point is that Mediterranean clearly advanced an analysis of looking at the language of the clause. And that's what the Minetti-Ferro court adopted. It explicitly adopts that in its, it says we adopt the analysis, and the language of the two clauses are the same. And you get from Mediterranean the point of whether it relates to the interpretation at least because it's a narrower clause. And I'd also like to point out that in Minetti-Ferro, Minetti-Ferro makes a specific observation relying on Shirk that arbitration clauses are just subsets of foreign selection clauses and that they apply equally. So there's no reason you would treat them differently. There's no reason you'd say that for foreign selection clauses, you look at the language if it's a contract claim, but if it's a tort claim, you just say it doesn't relate to the contract, and you skip over what the language of the clause is. So our view is that Kennedy. Well, it might not make much sense. But the sentence, the test that the court stated may be inartfully was whether a foreign selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract. You know, if it said whether the foreign selection clause in this case did, it would make sense because that was true in that case. But it stated it as a general rule. I agree. Poses a bit of a problem. I do agree with that point. But, again, I think you have to start with if you look at the beginning, they started with the language of the clause. Well, if you look into what they're doing, they wouldn't have written that sentence if they had thought it through. No, but I disagree. Well, may I respectfully disagree with that? Yes. Right under where it talks about the scope of the foreign selection clause under tort claims, it specifically addresses the language of the clause at issue. Yes. Right. Which is interpretation of fulfillment, which is a lot like the language in Mediterranean which the Court relies on. Mediterranean says arising under. And Mediterranean is the Court that says since it says arising under, that relates to interpretation. So the point is they were dealing with specific language, narrow language there, and they used a case that had the same narrow language. But every other case in the Ninth Circuit on foreign selection clauses, on arbitration clauses, which are a subset, look to the – and every other circuit I've seen look to the language of the clause. And it really just doesn't make sense that you'd say that, you know, it doesn't matter what the scope of the clause is, you know. It doesn't make sense, but isn't that what it says? Well, again, I don't – I'm not sure that that's – first of all, in that case the Court found that all the claims were within the clause. It wasn't a holding of exclusion. I understand that. When I said it, doesn't the sentence say that whether a foreign selection clause – a meaning any foreign selection clause. Well, I'm not – I understand the point, believe me, too. And I wish it were written differently, but I think a fair reading of this is that it's dealing with the clause in front of it. It's not dealing with the clause. So you think we should read whether a clause applies to mean whether this clause applies? Yes, I do. Well, that's – it would be nice if we could do that. Well, then I'll go – well, I've made the point, which I believe to be – I believe to be legally correct, because I believe they were deciding the case before that. I don't believe they were called upon to issue a broad holding as to all different clauses. Well, they weren't called upon to issue a broad holding. The question is, did they do it? If – I think if they did it, I honestly would say it was by – I hesitate to speak to the inner workings of the Court, but I honestly believe that if they did it, it wasn't – You say the Court is less than perfect in its opinions. You would hesitate to say? I don't want to criticize in any way, but I humbly believe that they were – they were limiting to the case in front of them. And I would go on to say that even if – even if that is the interpretation which I – which I have to live with, it's clear the claims here do. Every one of them. And the real claims at issue are the first, second, and third claims. The first – if I could just say one more minute, the first claim has – is a negligence claim which alleges three acts of negligence. It says you made excessive claims for damages, which is in the letters, I suppose. You implied that I would go – you'd go public with claims of financial irresponsibility, and you implied that there were threats of physical harm. So three – three acts. They say breach duties of care. And the duties of care are specifically implied in the first cause of action to arise from the contractual business relationship, meaning the lease. The second cause of action takes the exact same three acts and says those are intentional affliction of emotional distress. The third cause of action says emotional distress arose from a breach during the lease that when – when you enter on the property without permission, you violated my rights on the lease, and then they incorporate the second cause of action, which is the continuing emotional distress from the letters. Every one of those causes of actions, which are the only three that reference the torts after the general incorporation by reference, those three causes of action all require analysis of whether – the third cause of action clearly requires analysis of whether there was a breach of the lease, and the first and two clearly require analysis of whether there were excessive claims made. So even if – What do you think about the district court's use of form of nonconvenience? I think it would clearly be better for our side if it had been briefed and argued. No doubt about it. But I think that you have the related motions of personal jurisdiction, which was heavily briefed, and all the factors put in, including – because under personal jurisdiction, you have the same analyses of the state's respective interests. You have the deference to the plaintiff's home forum. You have where the events took place, where the witnesses are. All those come into the specific jurisdiction analysis. And I think the court was entitled in this situation to say that I have all this evidence in front of me. I'm making an alternative holding. We've also, by the way, challenged the specific jurisdiction finding. You know, what the court basically said in specific jurisdiction is – and I see my time is running out – is we think these alleged threats of physical harm would be just enough to get over a specific jurisdiction. I want to make only two points there. One is the evidence in the record is that she didn't authorize these conversations. She says in her declaration, the only communications I authorized was the letters to be sent. I didn't authorize these telephone calls. And so you have an agency allegation, which is, was Mr. Sen, who was responding to Mr. Dang, acting as her agent and saying whatever he said. Doesn't she have a right – when the forum selection clause says that all dispute is going to be litigated in Germany, doesn't she have a right to have that dispute litigated in Germany? She says, I did not authorize Mr. Sen. I did not authorize anyone to have any communications other than these letters. But, counsel, if that issue was heavily briefed, then didn't the district court make a different determination than the one you are positing? Well, I'd actually been – I actually skipped – I saw my time was running out, and I skipped from one issue to the other, and I sincerely apologize for that. I remember I'd wanted to make a point, which is just that there's an agency issue here that has to do with Mr. Sen. Remember, the sequence of events is that Mr. Dang calls Mr. Sen and that he responds. She says Mr. Sen was not authorized. There's an agency issue that's raised, which is a dispute. And this goes solely to the question of whether there's jurisdiction over her, right? Jurisdiction over her, and it also goes to the forum selection clause, because doesn't that dispute get to be litigated in Germany? Don't all these claims about threats depend on an agency finding as to Mr. Sen? And isn't that a dispute that gets to be litigated in Germany? In personal jurisdiction, in determining personal jurisdiction, doesn't the court get to make at least a preliminary determination regarding that issue to determine whether or not there's personal jurisdiction? I think that's – I think that's a – I think that's a fair point. All right. Thank you, counsel. Thank you very much, Your Honors. Your Honors, unless you have any specific questions of me, I don't need any additional time at this point. I think everything that we've said with respect to the law and the facts are in our briefing. Thank you, counsel. Thank you, Your Honor. Thank you both very much. The case just argued will be submitted.
judges: Reinhardt, Rawlinson, Wilken